United States District Court
Southern District of Texas

**ENTERED**

September 10, 2021

Nathan Ochsner, Clerk

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| KELLY THOMAS, | § | CIVIL ACTION NO. |
| Plaintiff, | § | 4:20-cv-03612 |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| LIFE PROTECT 24/7 | § | |
| INC d/b/a LIFE | § | |
| PROTECT 24/7, | § | |
| Defendant. | § | |

### OPINION AND ORDER
### DENYING MOTION TO DISMISS

The motion by Defendant Life Protect 24/7, Inc, doing business as Life Protect 24/7, to dismiss the amended complaint of Plaintiff Kelly Thomas is denied. Dkt 13.

1. Background

Congress enacted the Telephone Consumer Protection Act in 1991 in response to a "torrent of vociferous consumer complaints about intrusive robocalls." *Barr v American Association of Political Consultants*, 140 SCt 2335, 2344 (2020). It imposes a number of restrictions on the use of automated telephone equipment. See 47 USC § 227.

Pertinent here, § 227(b)(1)(A)(iii) essentially bans robocalls to cell phones, with § 227(c)(5) and 47 CFR § 64.1200(c) making it "unlawful for a caller to make telephonic solicitations to a residential telephone number listed on the federal do-not-call registry." *Cunningham v Mark D. Guidubaldi & Associates LLC*, 2019 WL 1119365, *2 (ED Tex), adopted by 2019 WL 1117915; see also *Morris v Hornet Corp*, 2018 WL 4781273, *4 (ED Tex), adopted by 2018 WL 4773547. The TCPA also "creates a private right of action for persons to sue to enjoin unlawful uses of

autodialers and to recover up to $1,500 per violation or three times the plaintiffs' actual monetary losses." *Facebook, Inc v Duguid*, 141 SCt 1163, 1168 (2021), citing 47 USC § 227(b)(3).

Unfortunately, anyone with a cell phone knows that the threat of civil action hasn't stopped unsolicited robocalls from annoying consumers. Thomas lives in Katy, Texas and is one of those annoyed consumers. Dkt 9 at ¶ 6. She accuses Life Protect of being a robocall offender. Id at ¶¶ 15, 18–20; Dkt 17 at 1–2. Life Protect is a corporation that sells medical alert devices with its principal place of business in Norfolk, Virginia. Dkt 9 at ¶ 8; Dkt 13 at 8. It also appears to be incorporated there, according to records of the Virginia State Corporation Commission. See https://cis.scc.virginia.gov/EntitySearch/Index

Thomas claims that she's been on the federal do-not-call registry since July 2008. Dkt 9 at ¶ 16. She alleges that Life Protect nonetheless called her personal cell phone "on a repetitive and continuous basis for solicitation purposes" beginning in September 2019. Id at ¶ 13. Each time she answered, she "heard a pre-recorded voice before anyone came on the line, indicating to her that the call was made using an automated telephone dialing system." Id at ¶ 18. And whenever she did speak with a live person, she "was solicited to purchase one of Defendant's medical alert devices." Id at ¶ 19.

During one of these calls in December 2019, Thomas actually purchased a medical alert device "to ascertain who was responsible for the calls." Id at ¶ 20. Her credit-card statement depicts that charge along with two telephone numbers. Dkt 9 at ¶¶ 22–23; see Dkt 9-2 (credit card statement). Thomas says that she called both numbers and heard an automated message indicating that she had reached "Life Protect 24/7." Dkt 9 at ¶ 24. Life Protect also mailed a confirmation of the purchase and the product itself to Thomas in Texas. Id at ¶ 21; Dkt 9-1 (order confirmation form); Dkt 17 at 8.

Thomas brought action against Life Protect in October 2020 for violating several provisions of the TCPA and the Texas Business & Commerce Code. Dkt 1 at ¶¶ 23–44. She then amended her complaint in November 2020, keeping the causes

of action the same while adding to her factual allegations. See generally Dkt 9.

Life Protect moved to dismiss the amended complaint in December 2020. It challenges subject matter and personal jurisdiction, while also arguing that Thomas didn't sufficiently plead her claim under the Texas Business & Commerce Code. Dkt 13. Thomas responded. Dkt 17. The parties argued the motion in March 2021. Dkt 33. Thomas there withdrew her claim under the Texas Business & Commerce Code, which was dismissed. Dkt 33 at 25.

Life Protect was also recently before another court in the Southern District of Texas on a similar matter. Thomas is apparently a member of a "Facebook group that seeks to file lawsuits against various companies based on alleged robocalls." Id at 22–23. One member of that Facebook group brought action against Life Protect in June 2020, which was pending before Judge Kenneth M. Hoyt until the plaintiff voluntarily dismissed her action. See *Pepper v Life Protect 24/7 Inc*, Civil Action No 20-02154, Dkts 40, 41.

2.   Legal standard

a.   Subject matter jurisdiction

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to seek dismissal of an action for lack of subject matter jurisdiction. This includes a challenge to the standing of the plaintiff to assert a claim and to the constitutionality of the TCPA provision that the plaintiff claims has been violated.

Federal courts are ones of limited jurisdiction. *Howery v Allstate Insurance Co*, 243 F3d 912, 916 (5th Cir 2001), citing *Kokkonen v Guardian Life Insurance Co of America*, 511 US 375, 377 (1994). A federal court's decision to hear a case that's beyond its subject matter jurisdiction is not a "mere technical violation," but rather "an unconstitutional usurpation" of power. Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 3522 (West 3d ed June 2021 update). Subject matter jurisdiction is thus a threshold matter. *Steel Co v Citizens for a Better Environment*, 523 US 83, 94–95 (1998), quoting *Mansfield, Coldwater & Lake Michigan Railway Co v Swan*, 111 US 379 (1884).

3

Dismissal is appropriate "when the court lacks the statutory or constitutional power to adjudicate the claim." *In re Federal Emergency Management Agency Trailer Formaldehyde Products Liability Litigation*, 668 F3d 281, 286 (5th Cir 2012), quoting *Home Builders Association Inc v City of Madison*, 143 F3d 1006, 1010 (5th Cir 1998) (internal quotations omitted). The burden is on the party asserting jurisdiction to establish by a preponderance of the evidence that it is proper. *New Orleans & Gulf Coast Railway Co v Barrois*, 533 F3d 321, 327 (5th Cir 2008) (citations omitted). Indeed, a presumption against subject matter jurisdiction exists that "must be rebutted by the party bringing an action to federal court." *Coury v Prot*, 85 F3d 244, 248 (5th Cir 1996).

b.   Personal jurisdiction

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal of an action for lack of personal jurisdiction. A federal court may exercise jurisdiction over a nonresident defendant if the long-arm statute of the forum state confers personal jurisdiction over that defendant *and* exercising that jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. *McFadin v Gerber*, 587 F3d 753, 759 (5th Cir 2009) (citation omitted). The Texas long-arm statute confers jurisdiction "to the limits of federal due process" and thus collapses the personal jurisdiction inquiry here into one federal due process analysis. *Latshaw v Johnston*, 167 F3d 208, 211 (5th Cir 1999) (citations omitted); *Johnston v Multidata Systems International Corp*, 523 F3d 602, 609 (5th Cir 2008) (citation omitted).

Federal due process permits personal jurisdiction over a nonresident defendant who has minimum contacts with the forum state, subject to the limit of not offending "traditional notions of fair play and substantial justice." *Johnston*, 523 F3d at 609 (internal quotations omitted). Such contacts may establish either general or specific jurisdiction.

A federal court has *general jurisdiction* over a nonresident defendant "to hear any and all claims" if that defendant's contacts with the forum are so "continuous and systematic" as to render it "essentially at home" in the forum. *Daimler AG v Bauman*, 571 US 117, 127 (2014), quoting *Goodyear Dunlop Tires Operations*

*SA v Brown*, 564 US 915, 919 (2011) (internal quotations omitted). Demonstrating that general personal jurisdiction exists is difficult and requires "extensive contacts between a defendant and a forum." *Johnston*, 523 F3d at 609, quoting *Submersible Systems Inc v Perforadora Central SA*, 249 F3d 413, 419 (5th Cir 2001). "General jurisdiction can be assessed by evaluating contacts of defendants with the forum over a reasonable number of years, up to the date the suit was filed." *Johnston*, 523 F3d at 610, quoting *Access Telecommunications Inc v MCI Telecommunications Corp*, 197 F3d 694, 717 (5th Cir 1999) (internal quotations omitted). Such contacts "must be reviewed in toto, and not in isolation from one another." *Johnston*, 523 F3d at 610, citing *Holt Oil & Gas Corp v Harvey*, 801 F2d 773, 779 (5th Cir 1986).

A federal court has *specific jurisdiction* over a nonresident defendant to adjudicate "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 US at 919 (quotation omitted). It exists "when a nonresident defendant 'has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Walk Haydel & Associates Inc v Coastal Power Production Co*, 517 F3d 235, 243 (5th Cir 2008), quoting *Panda Brandywine Corp v Potomac Electric Power Co*, 253 F3d 865, 868 (5th Cir 2001). And so, a plaintiff must establish two things to establish specific jurisdiction over a non-state defendant—*first*, that minimum contacts exist between the defendant and the state; and *second*, that the harm alleged arises out of or relates to the defendant's forum-related contacts. *Bulkley & Associates LLC v Department of Industrial Relations, Division of Occupational Safety and Health of the State of California*, 1 F4th 346, 351 (5th Cir 2021) (citations omitted); see also *Ford Motor Co v Montana Eighth Judicial District Court*, 141 SCt 1017, 1026 (2021). "These rules derive from and reflect two sets of values—treating defendants fairly and protecting 'interstate federalism.'" *Ford*, 141 SCt at 1025, quoting *World-Wide Volkswagen Corp v Woodson*, 444 US 286, 293 (1980).

"When a nonresident defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the defendant." *Mink v AAAA*

*Development LLC*, 190 F3d 333, 335 (5th Cir 1999) (citation omitted). Proof by a preponderance of the evidence isn't required. *Johnston*, 523 F3d at 609 (citation omitted). The plaintiff instead meets its burden by "presenting a *prima facie* case that personal jurisdiction is proper." *Quick Technologies Inc v Sage Group PLC*, 313 F3d 338, 343 (5th Cir 2002) (quotation omitted).

Once the plaintiff establishes minimum contacts between the defendant and the forum state, the burden of proof then shifts to the defendant to "show that the assertion of jurisdiction is unfair and unreasonable." *Sangha v Navig8 Ship Management Private Ltd*, 882 F3d 96, 102 (5th Cir 2018), citing *Wien Air Alaska Inc v Brandt*, 195 F3d 208, 215 (5th Cir 1999). Such a showing must be "'compelling.'" *Sangha*, 882 F3d at 102, quoting *Burger King*, 471 US at 477. The Fifth Circuit has established five factors that a reviewing court should use to determine whether jurisdiction is *fair and reasonable*, being:

- o *First*, the burden on the nonresident defendant of having to defend itself in the forum;

- o *Second*, the interests of the forum in the case;

- o *Third*, the interest of the plaintiff in obtaining convenient and effective relief;

- o *Fourth*, the interest of the interstate judicial system in the most efficient resolution of controversies; and

- o *Fifth*, the shared interests of the states in furthering fundamental social policies.

*Sangha*, 882 F3d at 102, citing *Burger King*, 471 US at 477.

The reviewing court must accept as true uncontroverted allegations in the plaintiff's complaint. *Johnston*, 523 F3d at 609 (quotation omitted). But the district court isn't required "to credit conclusory allegations, even if uncontroverted." *Panda*, 253 F3d at 869. The court may also receive "'any combination of the recognized methods of discovery,' including affidavits, interrogatories, and depositions to assist in the jurisdictional analysis." *Little v SKF Serige AB*, 2014 WL 710941, *2 (SD Tex), quoting *Walk Haydel & Associates*, 517 F3d at 241. Conflicts between any facts contained in the affidavits or other evidence submitted by the parties must be resolved in favor of the plaintiff

6

and the existence of personal jurisdiction. See *Johnston*, 523 F3d at 609 (quotation omitted).

    3.    Analysis

Life Protect presents four arguments in support of its motion to dismiss—*first,* that Thomas doesn't have standing to bring claims under §§ 227(b)(1)(A)(iii) and 227(c) because she hasn't suffered a cognizable injury; *second,* that subject matter jurisdiction is lacking because § 227(b)(1)(A)(iii) was unconstitutional when the alleged calls were made; *third,* that Thomas hasn't established that personal jurisdiction exists over it; and *fourth,* that Thomas hasn't provided well-pleaded facts sufficient to indicate the facial plausibility of the claims asserted against it under the Texas Business and Commerce Code. Dkt 13.

The last argument needn't be addressed because Thomas withdrew the subject claim at hearing. Dkt 33 at 25. The first two arguments present questions of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. The third addresses personal jurisdiction under Rule 12(b)(2). They will be addressed in that order, as inquiry into subject matter jurisdiction precedes personal jurisdiction in conceptual order. Wright & Miller, *Federal Practice and Procedure* § 1063.1.

    a.    Rule 12(b)(1), standing

The criteria sufficient to confer Article III standing are well known. A plaintiff must show that she's suffered an injury in fact; the injury is fairly traceable to the challenged conduct; and the injury is likely to be redressed by a favorable judicial decision. *Salermo v Hughes Watters & Arkanase LLP*, 516 F Supp 3d 696, 704 (SD Tex 2021), citing *Lujan v Defenders of Wildlife*, 504 US 555, 560–61 (1992). The alleged injury must be *concrete* to meet the injury-in-fact criteria, meaning that it must be "practical and developed, rather than 'intellectual' and 'abstract.'" *Salermo*, 516 F Supp 3d at 704, quoting *Federal Election Commission v Akins*, 524 US 11, 20 (1998).

Thomas alleges that Life Protect "repeatedly" called her "on a repetitive and continuous basis for solicitation purposes." Dkt 9 at ¶ 13. She also alleges that she "did not request information" from Life Protect and "was also not interested in

purchasing" its product. Id at ¶¶ 14–15. And she alleges that Life Protect did this "with the purpose of harassing" her. Id at ¶¶ 36.

Life Protect insists that this is insufficient to establish that its unwanted calls are a concrete harm. Dkt 13 at 12–15. Decision by the Fifth Circuit in *Cranor v 5 Star Nutrition* dictates otherwise. 998 F3d 686 (5th Cir 2021). The plaintiff there brought action under the TCPA after receiving a single unsolicited text message from the defendant despite having already asked it not to text him. He alleged that the text message was annoying, wasted his time, depleted his phone battery, and invaded his privacy. The district court found this insufficient. But the Fifth Circuit reversed, holding that a single text message is a nuisance and an invasion of privacy and, thus, can alone establish standing. Id at 689–90, 692–93. Indeed, this type of nuisance is the kind of injury that the TCPA was specifically enacted to curb. Id at 688; see also *Gadelhak v ATT Services, Inc*, 950 F3d 458, 462 (7th Cir 2020) (opinion by Barrett, J).

If a single, unwanted text message gives rise to a concrete injury, multiple unwanted phone calls with prerecorded messages surely do as well. Judge Hoyt had no difficulty determining that the plaintiff there established a concrete injury by pleading that the calls constituted "a nuisance" because they were "bothersome, disruptive, and frustrating." See *Pepper v Life Protect 24/7*, Civil Action No 20-2154, Dkt 36 at 2, 5–6; see also *Shields v Dick*, 2020 WL 5522991, *3–5 (SD Tex) (finding concrete injury from single text message); *Throndson v Huntington National Bank*, 2020 WL 3448281, *3–7 (SD Ohio) (concrete injury from unspecified number of "prerecorded calls to cell phones").

The motion under Rule 12(b)(1) directed towards standing will be denied.

b.   Rule 12(b)(1), constitutionality of § 227(b)

Life Protect also moves under Rule 12(b)(1) to dismiss Thomas' claim under § 227(b)(1)(A)(iii), asserting that the provision was unconstitutional when it made the alleged calls in 2019. Dkt 13 at 15–19.

As originally enacted in 1991, § 227(b)(1)(A)(iii) of the TCPA provided:

(1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

(i) to any emergency telephone line (including any "911" line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or law enforcement agency);

(ii) to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

From the outset, then, § 227(b)(1)(A)(iii) banned "almost all robocalls to cell phones." *Barr*, 140 SCt at 2344.

But Congress amended Section 227(b)(1)(A)(iii) in 2015 by adding the following language at the very end:

(a) IN GENERAL.—Section 227(b) of the Communications Act of 1934 (47 U. S. C. 227(b)) is amended—

(1) in paragraph (1)—

(A) in subparagraph (A)(iii), by inserting ', unless such call is made solely to collect a debt owed to or guaranteed by the United States' after 'charged for the call.'

*Barr*, 140 SCt at 2344–45, quoting Bipartisan Budget Act of 2015, 129 Stat 588.

This amendment carved out a new and limited "government-debt exception to the general robocall restriction." *Barr*, 140 SCt at 2345. But the Supreme Court held that exception to be content-based discrimination in violation of the First Amendment. Id at 2346–48. In doing so, it also decided that the appropriate remedy was to "sever the 2015 government-debt exception and leave in place the longstanding robocall restriction." Id at 2355.

Life Protect argues that it can't be held liable for any calls that Thomas allegedly received in 2019 because the Supreme Court held aspects of § 227(b)(1)(A)(iii) to be unconstitutional between the time of amendment in 2015 until the *Barr* ruling in July 2020. Dkt 13 at 15–18. This question of retroactivity was unnecessary to the decision in *Barr* and so was left open—although certain Justices expressed views on it. A brief footnote in the plurality opinion by Justice Kavanaugh states:

> As the Government acknowledges, although our decision means the end of the government debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate. *On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.*

140 SCt at 2355, n 12 (emphasis added) (citation omitted). But only two justices joined this statement, being Chief Justice Roberts and Justice Alito. And Justice Gorsuch in dissent specifically noted that such approach would force courts to partake in the "very same kind of content discrimination" that *Barr* sought to eliminate because it would shield "only government-debt collection callers from past liability under an admittedly unconstitutional law." Id at 2366.

Many courts have determined (based on footnote 12) that the severability remedy applied retroactively to uphold the rest of

the TCPA, including Judge Hoyt in *Pepper*. See Civil Action No 20-02154, Dkt 36 at 6 n 2; see also *Abramson v Federal Insurance Co,* 2020 WL 7318953, *2 (MD Fla) (collecting five citations); *Shen v Tricolor California Auto Group LLC*, 2020 WL 7705888, *4 (CD Cal) (collecting two citations in addition to *Abramson*); *Trujillo v Free Energy Savings Co LLC*, 2020 WL 8184336, *5 (CD CA); *McCurley v Royal Sea Cruises Inc*, 2021 WL 288164, *2–3 (SD Cal); *Mey v MedGuard Alert Inc*, 2021 WL 1652945, *3–6 (ND WV); *Van Connor v One Life America Inc*, 2021 WL 2667063, *3–5 (D SC). But some have declined to accord footnote 12 dispositive weight and instead held the entire provision to be invalid between enactment of the exception and the *Barr* ruling. For example, see *Lindenbaum v Realgy LLC*, 497 F Supp 3d 290, 297–99 (ND Ohio 2020); *Creasy v Charter Communications Inc,* 489 F Supp 3d 499, 507–08 (ED La 2020); *Hussain v Sullivan Buick-Cadillac-GMC Truck Inc*, 506 F Supp 3d 1242, 1245 (MD Fla 2020).

Such disparate conclusions simply direct analysis towards the standard principles of constitutional and statutory interpretation by which to determine retroactivity. And by those lights, the better view is plainly in favor of applying the *Barr* remedy retroactively.

It must always be remembered that a statute of Congress comes with a presumption of constitutionality. *United States v Anderson*, 901 F3d 278, 283 (5th Cir 2018), citing *Skilling v United States*, 561 US 358, 405–06 (2010). But still, Alexander Hamilton observed in *The Federalist*, no 78, "No legislative act, therefore, contrary to the Constitution, can be valid. To deny this, would be to affirm, that the deputy is greater than his principal; that the servant is above his master; that the representatives of the people are superior to the people themselves; that men acting by virtue of powers, may do not only what their powers do not authorize, but what they forbid." *The Federalist* 524 (Wesleyan 1961) (Jacob E. Cooke, ed). The United States Supreme Court in *Marbury v Madison* then set this principle as a familiar cornerstone of Article III power, declaring, "A legislative act contrary to the constitution is not law." 5 US 137, 177 (1803).

The finding of a law to be unconstitutional thus means that it is "void, and is as no law." *Ex parte Siebold*, 100 US 371, 376

(1879); see also *Marbury,* 5 US at 177. This further means that courts must then treat "the original, pre-amendment statute as the 'valid expression of the legislative intent.'" *Barr,* 140 SCt at 2353, quoting *Frost v Corporation Commission of Oklahoma*, 278 US 515, 526–27 (1929). Still further, it is this "controlling interpretation of federal law" by the Supreme Court that "must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate" announcement of the interpretation. *Harper v Virginia Department of Taxation*, 509 US 86, 97 (1993).

Nothing disturbs the overall presumption in favor of the TCPA's constitutionality. The decision in *Barr* finding unconstitutional *only* the government-debt exception means that *only* it was void from inception. That the exception was also found to be severable further confirms that its unconstitutional nature didn't infect the constitutionality of the remainder of the TCPA—all of which was language enacted on a stand-alone basis well prior to the exception. At least two courts are in accord with this holding. *Franklin v Navient Inc*, 2021 WL 1535575, *2–4 (D Del 2021) (citations omitted) (opinion by Bibas, J, sitting by designation); see also *Cano v Assured Auto Group*, 2021 WL 3036933, *5–9 (ND Tex) (citations omitted).

The motion under Rule 12(b)(1) directed towards the constitutionality of § 227(b)(1)(A)(iii) will be denied.

c.   Rule 12(b)(2), personal jurisdiction

Thomas obviously doesn't like receiving robocalls, especially those that she says she received from Life Protect. There's no question that she could bring her TCPA claim against Life Protect in Virginia, where it has its principal place of business. The thornier issue is whether she can bring that claim here, in a venue more convenient to her and where she received the calls.

Life Protect maintains that general jurisdiction is lacking because it's not "at home" in Texas. Dkt 13 at 19. This seems obvious enough, and indeed, Thomas didn't bother to respond to this contention. See Dkt 17.

Life Protect also maintains that specific jurisdiction is lacking. It first contends that Thomas hasn't established a sufficient connection between her alleged injury and Life

Protect's alleged contacts with Texas. Id at 19–22. It also insists that Thomas hasn't shown that it purposefully availed itself of Texas. Id at 23. Thomas contends to the contrary that specific jurisdiction exists over Life Protect because it called her and sent its product to her in Texas. Dk 17 at 7–8.

i.    Minimum contacts

A court must first identify the "universe of possible jurisdictional contacts" when undertaking a minimum contacts analysis. *Bulkley & Associates*, 1 F4th 346 at 352. Those contacts must demonstrate that a defendant "purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there." *Seiferth v Helicopteros Atuneros Inc*, 472 F3d 266, 271 (5th Cir 2006) (quotation omitted). "Mere foreseeability, standing alone, does not create jurisdiction." *Moncrief Oil International Inc v OAO Gazprom*, 481 F3d 309, 313 (5th Cir 2007). But "a nonresident can establish contact with the forum by taking purposeful and affirmative action, the effect of which is to cause business activity (foreseeable by the defendant) in the forum state." *Central Freight Lines Inc v APA Transport Corp*, 322 F3d 376, 382 n 6 (5th Cir 2003), citing *Mississippi Interstate Express Inc v Transpo Inc*, 681 F2d 1003, 1007 (5th Cir 1982).

Thomas identifies two alleged contacts between Life Protect and Texas—the alleged robocalls made to her and the product sold and mailed to her. Dkt 9 at ¶¶ 13, 18, 20–21; Dkt 17 at 8. Life Protect says that those aren't enough.

A.    Making robocalls

Curiously, the live complaint doesn't directly state that Thomas has a phone number with a Texas area code. But it does allege that she resides in Katy, Texas and that the line at issue is her "residential and personal cellular telephone number." Dkt 9 at ¶¶ 6, 11. And further, this is the line to which Life Protect allegedly made its robocalls. Id at ¶¶ 13, 18, 20. This is sufficient to allege that Life Protect made robocalls to her in the forum. That isn't really in dispute, with the issue instead being whether such robocalls into Texas are sufficient purposeful availment to establish the requisite minimum contacts.

13

The Fifth Circuit holds that minimum contacts may be satisfied when a nonresident defendant intentionally commits "an act outside the state that causes tortious injury within the state." *Guidry v United States Tobacco Co*, 188 F3d 619, 628 (5th Cir 1999) (collecting cases). And it further holds, "Even an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." Ibid (collecting cases).

As to the *intentionality* of Life Protect's conduct directed into the forum, the Fifth Circuit and the Supreme Court recognize that unwanted calls are "intrusive" and constitute a "nuisance and privacy invasion." *Barr*, 140 SCt at 2344 (quotations omitted); *Cranor*, 998 F3d at 690–92 (citations omitted). Robocalls are thus akin to traditional intentional torts of, for example, trespass and nuisance. *Cranor*, 998 F3d at 690–93. And certainly, Life Protect's robocalls didn't happen by chance or fortuity, but only by intention and design.

The closer question is perhaps whether the effect here was *seriously harmful.* At first glance, the harm generated by a robocall may seem insignificant. But this can't be so, as Congress determined that specific legislative action was necessary to prohibit these calls and their cumulative effects. Indeed, the Supreme Court recognizes that the TCPA was passed in response "to a *torrent* of *vociferous* consumer complaints about *intrusive* robocalls," which were considered both a nuisance and a privacy invasion. *Barr*, 140 SCt at 2344 (emphasis added). The unique volume and intrusive nature of robocalls warrant labeling them seriously harmful within the meaning of this inquiry.

But according to Life Protect, the calls still shouldn't count as purposeful availment *of Texas* because it didn't know that any *particular* call made to any *particular* area code would be received in the *particular* State of Texas. This argument derives from the requirement noted above that the effects at issue must have been *intended* or *highly likely to follow* from the nonresident defendant's conduct. *Guidry*, 188 F3d at 628–29 (citations omitted).

14

Some courts have agreed with such argument, holding that a phone call can't establish minimum contacts when the defendant doesn't specifically know that its conduct will reach the particular forum. For example, see *Cantu v Platinum Marketing Group LLC*, 2015 LEXIS 90824, *8–12 (SD Tex) (citations omitted) (TCPA claim for unwanted automated cellphone calls); *Sojka v Loyalty Media LLC*, 2015 WL 2444506, *3 (ND Ill) (citations omitted) (TCPA claim for unsolicited text messages); *Frank v Gold's Gym of North Augusta, South Carolina*, 2018 WL 3158822, *3 (D Minn) (citations omitted) (same). This Court disagrees. Congress designed the TCPA to protect consumers wherever they might receive and be harassed by robocalls. And requiring such putative hyper-specific knowledge by the offending, robocalling defendant would severely curtail the statutory protection granted by Congress to individuals against such robocallers.

Under substantive law, a tortfeasor can quite plainly be liable for intentional conduct, even where the precise harm or exact victim might not be known in advance. For example, firing a gun into a crowd will still land you in a lot of trouble, even if you aren't aiming at anyone in particular. See generally *Transportation Insurance Co v Moriel*, 879 SW2d 10, 23 n 15 (Tex 1994) (superseded by statute on other grounds) (observing that person shooting into crowd and not hitting anyone but causing property damage is still liable for gross negligence), citing *TXO Production Corp v Alliance Resources Corp*, 509 US 443, 458–60 (1993) (observing that punitive damages could substantially outweigh actual damages if a person fired a gun into crowd and only caused property damage); *Misle v State Farm Mutual Automobile Insurance Co*, 908 SW2d 289, 290–91 (Tex App—Austin 1995, no writ) (citations omitted) (shooting into crowd and hitting someone brings liability in battery and not mere negligence). The same is true when creating an attractive nuisance on your property. Restatement (Second) of Torts § 339 (1965); see generally *Texas Utilities Electric Co v Timmons*, 947 SW2d 191, 193–94 (Tex 1997) (reaffirming adoption of § 339 and collecting cases).

The inquiry into jurisdictional contacts doesn't proceed on the exact same basis. Even so, the Fifth Circuit recognizes an analogous distinction:

> *When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment*. The defendant is purposefully availing himself of "the privilege of causing a consequence" in Texas. Cf S*erras v First Tennessee Bank National Association*, 875 F2d 1212 (6th Cir 1989). It is of no use to say that the plaintiff "fortuitously" resided in Texas. See *Holt Oil*, 801 F2d at 778. If this argument were valid in the tort context, the defendant could mail a bomb to a person in Texas but claim Texas had no jurisdiction because it was fortuitous that the victim's zip code was in Texas. It may have been fortuitous, but the tortious nature of the directed activity constitutes purposeful availment.

*Wien Air Alaska*, 195 F3d at 213 (emphasis added, citation form edited). And the Fifth Circuit notably holds that a defendant that initiates a telephone call and allegedly commits an intentional tort purposefully avails itself of the state where the effect of the tort fell and can therefore be subject to personal jurisdiction there. *Trois v Apple Tree Auction Center, Inc*, 882 F3d 485, 490–91 (5th Cir 2018) (collecting cases).

It thus doesn't matter whether Life Protect knew in advance that Thomas resided in Texas because certain types of intentional conduct must, by their very nature, manifest their effects beyond the borders of the state in which the defendant acts. Here, Life Protect (allegedly) engaged in the very business practice specifically condemned by Congress—calling numbers robotically at random. And by doing so, Life Protect knew full well that it was using cellular and wire lines intended to go far beyond its home state. In this instance, *wherever* it reaches a consumer with a robocall, Life Protect has purposefully availed itself of that state's laws. That it didn't know precisely where its intentional, externally directed contact would land with each dial of the phone is no reason to deprive a federal court of personal jurisdiction where its calls did, in fact, land.

This isn't to say that a person carrying around a cell phone necessarily carries with it personal jurisdiction over any business that might call that line wherever the phone might be located at the time. For instance, a business calling the (713) area code with the expectation of reaching someone in Houston won't necessarily be subject to personal jurisdiction in Oklahoma City if the person receiving the call happened to travel there with his or her cell phone that day.

But minimum contacts sufficient to establish personal jurisdiction exist here. Where a business is alleged to engage in intentional practices assuredly designed to manifest results across the country in contravention of a federal statute, the act of reaching out in that prohibited manner is purposeful availment of "the privilege of causing a consequence" in whatever state that call reaches. *Wien Air Alaska*, 195 F3d at 213.

B.      Sending a product

Thomas also alleges that Life Protect sold her its product over the phone and mailed it to her in Texas. Dkt 9 at ¶¶ 20–22; Dkt 17 at 8. Life Protect argues that merely contracting with a resident of a forum is insufficient to establish purposeful availment. Dkt 13 at 21, citing *Freudensprung v Offshore Technical Services Inc*, 379 F3d 327, 344 (5th Cir 2004); Dkt 19 at 8, citing *Holt*, 801 F2d at 778. But in both of its cited cases, the Fifth Circuit found that the significance of the minimum contacts was "severely diminished" due to choice-of-law provisions requiring that any contract disputes be governed by the law of a state different than that of the forum. *Freudenspring*, 379 F3d at 344 (citations omitted); *Holt*, 801 F2d at 778 (citations omitted). There's no such provision here to similarly diminish the significance of Life Protect's alleged contacts with Texas.

The Fifth Circuit instead recognizes that mailing a product to a resident of the forum may on its own constitute "a significant contact with the forum." *In re Chinese Manufactured Drywall Product Liability Litigation*, 742 F3d 576, 588 (5th Cir 2014). And Life Protect's knowledge of Thomas's location prior to selling and mailing her the product indicates that it took "purposeful and affirmative action, the effect of which is to cause business activity (foreseeable by the defendant) in the forum state." *Central Freight*

*Lines* 322 F3d at 382 n 6 (citation omitted); *see* Dkt 9 at ¶¶ 13, 19–22; Dkt 17 at 8.

The alleged robocalls that Life Protect made to Thomas while she was in Texas and the product it sold and mailed to her in Texas both satisfy minimum contacts.

> ii.   Harm arising out of or relating to the forum-related contact

Thomas argues that the harm she seeks to vindicate here arose from Life Protect's alleged calls to her. Life Protect asserts to the contrary that she "alleges no facts suggesting her claims arise out of Life Protect's supposed business activities in Texas." Dkt 19 at 9. That's nonsense. She alleges that Life Protect called her "on a repetitive and continuous basis for solicitation purposes," without her prior request or consent, and despite her number being on the *Do Not Call Registry*. Dkt 9 at ¶¶ 13–14, 16. When Thomas received these calls, she was solicited to purchase Life Protect's medical-alert devices, which she did—after which Life Protect charged her and sent her the device. Id at ¶¶ 19–22.

From this, it's quite clear that the alleged calls themselves constitute a nuisance and are also directly related to the mailing of the package, in violation of 47 USC § 227(b)(1)(A)(iii). And this further violated 47 USC § 227(c)(5) and 47 CFR § 64.1200(c) because Thomas had registered her number on the federal do-not-call list. As such, the alleged harm arises out of Life Protect's forum-related contacts.

The motion under Rule 12(b)(2) directed towards personal jurisdiction will be denied.

4.   Conclusion

The motion by Defendant Life Protect, Inc to dismiss the amended complaint of Plaintiff Kelly Thomas is DENIED. Dkt 13.

SO ORDERED.

Signed on September 10, 2021, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge